59 CCPA

**Application of Eugene F. MALIN.
Patent Appeal No. 8666.**

United States Court of Customs
and Patent Appeals.
March 9, 1972.

Eugene F. Malin, Fort Lauderdale, Fla., James H. Littlepage, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection under 35 U.S.C. § 103 of claims 1–6 of appellant's application "Sailing Hydrovehicle."[1] No claims have been allowed.

When under sail, the hulls of conventional sailing craft are subjected to "viscous, inertial, and wave drag" as they move through the water. These forces mechanically subtract from the vessel's efficiency. It appears that one way of overcoming or diminishing the effect of these mechanical "drags" on the hull of the craft is by "streamlining" the shape of the hull. Another known way to resolve the problem of hull drag is by use of a hydrovehicle which actually removes or "lifts" its hull out of the water while in "flight." Appellant's invention relates to such a hydrovehicle which may have hydrofoils and a sail so configured as to produce a lifting force on the craft as the sail takes on wind.

An abstract of appellant's disclosure, as set forth in the specification, states:

A wind propelled hydrovehicle comprising a combination of a vane for converting the force of the wind into a propelling force and a lifting force, and a buoyant body that rides in flight above the surface of a body of water on submerged supporting members.

Claim 6 is illustrative:

6. A method of raising the main body portion of a wind propelled hydrovehicle above the surface of a body of water on submerged supporting members below the surface of the water at a relatively low lift-off velocity, which consists in, placing the vane member in a propelling position to provide a propelling force to move the hydrovehicle through the body of water when the wind strikes the vane member for providing a support member lifting force less than the lift force required to raise the body portion above the surface of the body of water, moving the vane member to place the upper portion of the vane member windward of the lower portion of the vane member to provide a vane member lifting force, whereby the main body portion of the hydrovehicle is raised above the surface of the water by the addition of the support

1. Serial No. 716,261 filed March 11, 1968 as a continuation of application serial No. 565,837 filed July 18, 1966.

member lifting force and the vane member lifting force.

Figure 1 of appellant's drawings is reproduced below:

[A5327]

**FIG. I**

The sailing vessel has a T-shaped body portion 2 supporting a mast [2] 20 on which is rigged a mainsail [3] 3 and a jib 30. The body portion 2 has three downwardly extending legs 4, 5 and 6 with supporting means 7, 8 and 9 connected thereto. The specification states: "When the wind propels the hydrovehicle across a body of water the supporting members 7, 8 and 9 support the body portion [2] above the surface of the water by forces created by movement of the submerged supporting members through the water."

While Fig. 1 shows the supporting means in a horizontal position, other angles of inclination are possible to com-

pensate for different body configurations and sail positions to obtain "maximum lift with minimum drag for lifting body portion 2 above the surface of the water." Movable flaps 33, 34 and 35 are controlled by manually operated control stick 16 and associated control pistons. The flaps are provided in the supporting means for the purpose of varying the lifting force produced by the supporting means to fit the design of the particular craft and its response to the wind.

It appears that the lifting force on the sails which is utilized to lighten the water burden of the craft is the result of positioning the sail by adjusting the appropriate guide lines connected to the

2. A long pole or spar rising from the keel or deck of a ship and supporting the yards, boom and rigging. Definitions of

the various features are taken from Webster's Seventh New Collegiate Dictionary.

3. The principal sail on the main mast.

upper boom. The specification states that "[l]ine 32 and said similar port guide line are used to position the upper boom windward[4] of the lower boom [24] in order to shape the sail curvature in such a manner, as illustrated in Figure 1, that will convert a portion of the wind force into a lifting force that may aid in lifting the sail and that may aid in lifting the body portion 2 from the surface of a body of water, as well as to position the sail to propel the hydrovehicle through the water."

The references relied on below are:

| | | |
|---|---|---|
| Koelkebeck | 1,438,246 | December 12, 1922 |
| Lyman | 2,858,788 | November 4, 1958 |

The examiner relied on Koelkebeck for the disclosure in Fig. 5 thereof (hereinafter reproduced) of a sailboat having a mast 5 and a sail on vane 7 "which can be arranged in such a way as to provide an upward lifting force to relieve the sailboat of part of its burden."

It appears that Koelkebeck is concerned with the effect of wind vectors in conventional sailing craft which increase the burden of the craft because of downward pressures.

FIG. 5.

[A5328]

Accordingly, Fig. 5 discloses a structure designed to lighten the craft burden. The patent states:

> If, however, the gaff[5] be forced over to the wind, as best indicated in Figure * * * 5, the resultant wind pressure, as indicated by the arrow A' in Figure 5, *is in an upwardly slanting direction.* This serves *to greatly relieve the vessel of a part of its burden,* instead of adding to it. [Emphasis supplied.]

The examiner relied on Lyman for disclosing a sailing hydrovehicle having a mast, a sail or vane, and supporting members for lifting a hull above the surface of the water.

Inasmuch as Koelkebeck discloses a rigging having a vane member which propels and lifts a buoyant body, the examiner considered that it would have been obvious to one having ordinary skill in the art to substitute for the rigging and vane member of Lyman a rigging with a vane member that lifts similar to that of Koelkebeck. In response to appellant's argument that it would not have been obvious to combine Lyman with Koelkebeck, the examiner observed that:

> * * * different riggings are frequently used on sailboats for experimental purposes to gain the most favorable speed, and it would be obvious to one having ordinary skill in the art to use a well known rigging with a vane similar to that of Koelkebeck instead of the well known rigging with the vane of Lyman.

In affirming the examiner, it was the view of the board that:

> The Koelkebeck patent is definite * * * as to the lifting effect of the Figure 5 embodiment "to greatly relieve the vessel of a part of its burden." We see no reason why the weight of the Lyman vessel cannot be similarly effected to reduce the draft of the vessel in water. Amongst obvious variables which determine the draft and forward velocity of a craft

---

4. Moving or situated toward the direction from which the wind is blowing.

5. The spar upon which the head of a fore-and-aft sail is extended.

of the Lyman type through water, and its ultimate movement out of water is its weight. Koelkebeck teaches how to effectively control this. That this is effective to make the Lyman type of craft lift out of water at slower velocities should be obvious to one skilled in this art.

We think it apparent that Koelkebeck discloses that increased efficiency in use results from lightening the burden of weight on the hull. Koelkebeck attains this result by configuring his sail with the gaff "forced over to the wind," thus adapting the wind pressure in "an upwardly slanting direction" to "greatly relieve the vessel of a part of its burden." Lyman uses hydrofoils to completely eliminate the problem of hull drag when under full sail. The hull is lifted above the water surface as the vessel attains sufficient velocity where the water interacts with the hydrofoils to produce the necessary lifting to the hull of the craft.

The solicitor points out that the Lyman and Koelkebeck solutions are not mutually exclusive. We think that one skilled in the art practicing the Lyman invention would readily recognize from Koelkebeck that adaptation of the Koelkebeck sail configuration would assist the Lyman craft to lift its hull from the water at a lower velocity, inasmuch as it is the logical consequence of wind vector A′ of Fig. 5 of Koelkebeck that the craft will undergo a "lifting" force.

It is clear from Lyman that his craft is designed for operation with the hull elevated above the water line. It is also apparent that a certain effective wind velocity must be obtained before the hydrofoils act on the craft, as a result of the speed of the passing water and the angle of the foil, to lift the craft's hull above the water line. Thus, it would seem that any design feature that can be utilized to produce a lifting effect upon the Lyman sail will cause the hull to lift at a lower actual wind velocity.

In that regard, it is noted that Koelkebeck teaches a way of improving effective wind velocity by so configuring the mainsail as to change the direction of the effective wind vector to ease or subtract from the craft's burden. We think that one skilled in the art would readily perceive the possibilities that would result by resorting to the teaching of Koelkebeck for a sail configuration which could be used to augment the lifting force as an additive to that force produced by the hydrofoils.

Appellant argues that Koelkebeck fails to teach the use of a sail for achieving lift on the hull and that there is no mention in this reference of altering the draft of the vessel in any manner. However, it is apparent that if the wind vector on the sail is lifting, this lift force will be translated to the hull.

We have considered appellant's contention that the "problem solved by Koelkebeck for making a gaff-rigged sail more efficient is not presented on a triangular sail shown by Lyman because the sail connection at the top of the sail is fixed and is always closer to the craft centerline longitudinally than the boom and sail bottom," as well as the further contention that "[o]nly a sail having an upper boom that is able to move leeward of the lower boom * * * would have the problem shown in Koelkebeck." We agree with the solicitor that these contentions have little relevancy here in view of the breadth of appellant's claims which do not specify upper and lower booms or a gaff or schooner rig.

The claims merely call for a vane or sail which provides a "lifting force." A reading of claim 6, the most specific, concerning the upper portion of the sail, reveals that only the step of "moving the vane member to place the upper portion of the vane member windward of the lower portion of the vane member to provide a vane member lifting force," is recited. This language is not sufficiently specific as to warrant requiring a limitation on the sail structure other than it is so shaped as to provide a "lifting force." This requirement as to sail configuration is satisfied by Koelkebeck

and, as we said previously, we think that it would have been obvious to one of ordinary skill in the art to use the Koelkebeck sail configuration on the Lyman vessel.

We have considered the cases cited and the arguments advanced by appellant and we are not persuaded of reversible error in the decision of the board. Accordingly, we affirm.

Affirmed.